IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE JOHNSON,

          **Plaintiff,**

vs.                                                Civ. No.   05-357 JH/RLP

**BAXTER HEALTHCARE CORPORATION,**
et al.,

          **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on two cross motions for summary judgment: Defendant *Life Insurance Company of North America's Motion for Summary Judgment and Brief in Support* [Doc. No. 61], and *Plaintiff's Motion for Summary Judgment Against Life Insurance Company of North America for Underpayment of Benefits* [Doc. No. 64]. These motions present two sets of issues: first, whether any of Life Insurance Company of North America's ("LINA's") legal defenses to Plaintiff's claims entitle it to summary judgment, and second, whether LINA is liable for underpayment of benefits under the long term disability insurance plan at issue in this case. After considering the law, the arguments of the parties, and the evidence presented on summary judgment, the Court concludes that none of LINA's legal defenses have merit, and that LINA is liable for underpayment of benefits. Accordingly, LINA's motion for summary judgment will be denied, and Plaintiff's motion for summary judgment on Count I will be granted.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether judgment as a matter of law is appropriate, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir. 1999).

A court reviewing a challenge to a denial or miscalculation of employee benefits under ERISA applies an "arbitrary and capricious" standard to a plan administrator's actions where the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, in this case the parties agree that the terms of the Policy grant LINA no such discretion, and that the Court should review LINA's administrative decisions *de novo*. *Id*.

## FACTS

Unless otherwise noted, the following facts are undisputed. Plaintiff Diane Johnson ("Johnson") is a former employee of American Hospital Supply Corporation ("AHSC"), where she worked as a sales representative from October 8, 1984 until June 13, 1985, when she began disability (her "disability date"). Thus, Johnson worked for AHSC for 247 days, and she never returned to work after that time.[1] Johnson is covered by the American Hospital Long-Term Disability Plan ("the Plan"), which is funded through LINA's Policy No. LK5312 ("the Policy").[2] Defendant LINA administered claims for long-term disability benefits under the Plan, including Johnson's claims.

---

[1] Johnson was formally placed on long-term disability on November 14, 1985.

[2] Subsequently, Baxter Healthcare Corporation purchased AHSC and is its successor in interest under the Plan.

The Policy provides disability benefits in an amount based, in part, upon the earnings of participants who become disabled. The Policy states that the "[a]mount of monthly disability benefit [is] 60% of base monthly salary subject to a maximum monthly benefit of $2,500." *See* Doc. No. 65, Ex. C. However, more recent documents show the Policy's maximum monthly benefit to be $10,000. *See* Doc. No. 65, Ex. D and Doc. No. 80, Ex. A. Further, the Policy provides that, for a salesman such as Johnson, the "base salary" means the "monthly average of 100% of total earnings as shown (1) on W-2 statement . . . for the calendar year immediately preceding the date of disability or (2) for the period employed, if less than a calendar year." Doc. No. 65, Ex. C. Those benefits are then reduced, or offset, by the "monthly pro-rata portion" of disability benefits paid to Johnson under state or federal law, such as Social Security disability payments. *Id*.

Johnson received regular earnings for 1984 in the amount of $13,204.78, and for 1985 in the amount of 23,944.00[3], for a total of $37,148.78. Doc. No. 65, Ex. A; Doc. No. 64, Ex. A at ¶¶ 4-5. Because Johnson was a salesman, her earnings during her period of employment with AHSC included commissions that were not paid to her immediately. In 1986, Johnson received $4,381.98 in commissions earned during her employment that were shown on her 1986 W-2 form. Doc. No. 64, Ex. A at ¶ 6. Then, in 1992, Johnson received $2,538.17 as payment for vacation days that she had accrued during her employment period before her medical leave of absence and during her medical leave, and which were reflected on her W-2 for 1992. Doc. No. 64, Ex. A, ¶ 7 and Ex. 4 thereto; Doc. No. 70, Ex. 1. Johnson has never received pension benefits from AHSC or Baxter. Doc. No. 64, Ex. A at ¶ 14.

---

[3] Included in this amount are commissions earned by Johnson during her employment with AHSC but paid between June 13, 1985 (Johnson's disability date) and December 31, 1985 (the end of the tax year).

3

LINA did not include either the "late commission" or the "vacation payment" in its computation of Johnson's base salary, Doc. No. 65, Ex. B. at pp. 2-3, although doing so would have increased her monthly disability benefit.  On the other hand, LINA did use those payments to calculate Johnson's Social Security Offset in order to increase the amount of the offset and therefore decrease its monthly payments to Johnson.  *Id*. at pp. 3-4; Doc. No. 64, Ex. A at ¶ 12 and Ex. 6 thereto.  Furthermore, LINA admits that when it calculated Johnson's monthly benefit, it improperly used 360 days per year instead of 365 days in order to compute her base salary.  Doc. No. 65, Ex. B at p.3; Doc. No. 77 at p.6; Doc. No. 70 at p.8.

At some point after Johnson became disabled, she began receiving disability benefits under the Policy.  LINA terminated those benefits on February 29, 1996 on the grounds that Johnson was no longer disabled, as that term is defined under the Policy.  Doc. No. 61, Ex. 5.  As a result of the termination of her benefits, Johnson filed an ERISA action in Louisiana, to which LINA was a party.  *Id*. at p. 4, ¶ 10.  The record before the Court indicates that the issue in the Louisiana lawsuit was whether Johnson was entitled to receive benefits under the Policy; there is nothing in the record to indicate that the *amount* of Johnson's benefits was ever disputed or actually litigated in the Louisiana case.  Doc. No. 61, Exs. 6 and 7.  Ultimately, the parties settled the Louisiana case, and Johnson's benefits were reinstated at the rate of $2,040.20 per month, the same monthly amount paid to her before she filed the Louisiana lawsuit.

On December 4, 2003, Johnson requested a full copy of her claim file, which she received on December 23, 2003.  Doc. No. 70, Ex. 5; Doc. No. 61, Ex. 8.  In a letter dated May 13, 2004, James M. Parker, counsel for Johnson, made a claim for underpayment of benefits, citing Defendants' failure to include the "late commission" and the "vacation payment" in the calculation

4

of Johnson's base salary. Doc. No. 70, Ex. 7. On June 14, 2004, Cigna Group Insurance[4] responded to Mr. Parker's letter, declining to make any adjustment to Johnson's base salary or monthly benefit amount. Doc. No. 61, Ex. 8.

In her Second Amended Complaint in this case, Johnson alleges that first American Hospital Supply Corporation, and later Baxter, failed to provide LINA with complete and accurate earnings information regarding Johnson. She also contends that LINA failed to provide her with a complete copy of her file and did not calculate her benefits properly. Based on the foregoing, Johnson asserts three claims for relief under ERISA, 29 U.S.C. § 1001 et seq. In Count I, she makes a claim for benefits due under the Plan, along with interest and attorneys fees, under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(g). That is the sole claim addressed in this Memorandum Opinion, as the parties have not addressed the other claims in their cross motions for summary judgment.[5]

## DISCUSSION

### I.   LINA'S LEGAL DEFENSES

In its motion for summary judgment, LINA raises several legal defenses to Johnson's claims. These include the statute of limitations, the contractual limitations period, res judicata, accord and satisfaction, and laches.

---

[4] The record contains no evidence regarding Cigna Group Insurance's legal relationship to LINA or the Baxter Defendants.

[5] In Count II of her Second Amended Complaint, Johnson claimed that Defendants were liable for breach of fiduciary duty and requested "appropriate" relief and civil penalties under 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(*l*). In a Memorandum Opinion and Order entered October 23, 2006, the Court dismissed this claim. In Count III, Johnson seeks to recover a civil penalty against Defendants under 29 U.S.C. § 1132(c). This Memorandum Opinion does not address Count III because the Court has given Johnson an opportunity to amend that claim. In addition, neither motion for summary judgment addressed Count III; rather, both motions focused solely on whether Defendants were liable for underpayment of benefits under Count I.

Johnson argues that LINA has waived its arguments as to the statute of limitations, the contractual limitations period, res judicata, and laches because it failed to specifically plead those defenses are required by Rule 8(c) of the Federal Rules of Civil Procedure. The Court agrees.

Rule 8(c) provides, in pertinent part:

> **Affirmative Defenses**. In pleading to a preceding pleading, a party shall set forth affirmatively *accord and satisfaction*, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, *laches*, license, payment, release, *res judicata*, statute of frauds, *statute of limitations*, waiver, and any other matter constituting an avoidance or affirmative defense.

(emphasis added). Thus, Rule 8(c) requires a party to affirmatively plead each of the above defenses, or else they will be deemed to be waived. *Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994) )"([F]ailure to plead an affirmative defense results in a waiver of that defense."). Because LINA has failed to plead the defenses of laches, res judicata, and statute of limitations, and has failed to request leave to amend its answer to add those defenses, the Court concludes that they are waived.

Defendant also asserts the defense of a contractual limitations period of three years. As explained above, Defendant failed to expressly plead any defense based upon the limitations period, whether statutory or contractual. However, Defendant contends that it preserved the contractual limitations defense in its answer by pleading its Second Affirmative Defense, where it states that "the provisions of the insurance policy issued by LINA clearly indicate the extent of coverage and the exclusions, provisions and declarations of coverage governing the receipt of benefits." The Court disagrees that the foregoing language preserves LINA's defense. Rule 8(c) expressly provides that one must "set forth affirmatively" each and every affirmative defense. By contrast, the broad

6

language of LINA's Second Affirmative Defense provides no notice that it is asserting a limitations period defense; rather, it purports to incorporate each and every provision of the Policy. As a result, LINA has failed to expressly plead the contractual limitations defense, and it has been waived. *See S. Wallace Edwards & Sons, Inc*., 353 F.3d 367, 372-73 (4th Cir. 2003) ("We are of opinion that a defense urged by an insurance company of such a breach of a provision of the policy by an insured is an affirmative defense under Rule 8(c).") (citing 5 Wright and Miller, Federal Practice and Procedure § 1271 (5th Ed. 1994) (noting decisions in United States Courts of Appeal for the Fifth, Eighth and Tenth Circuits), and refusing to allow contractual limitations defense where it had not been pleaded under Rule 8(c)). Thus, the Court concludes that LINA has waived its contractual limitations defense. *Cf. Financial Timing Publications, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 944 n. 9 (8th Cir. 1990) (refusing to find waiver of contractual limitations defense where defendant expressly pled statute of limitations and took other action to inform the plaintiff that it would seek to enforce the contractual limitations period).

LINA's final legal defense is accord and satisfaction, which it did expressly plead in its answer. LINA contends that the settlement of the Louisiana litigation acted as an accord and satisfaction of Johnson's claims for underpayment of benefits in this case. Johnson, in turn, argues that LINA failed to raise the accord and satisfaction defense at the administrative stage and therefore may not raise it now. LINA does not dispute this point, and fails to address the argument in its reply brief. The Court concludes that the doctrine of accord and satisfaction does not bar Johnson's claims.

It appears that the Tenth Circuit has not yet addressed the issue of whether a plan administrator may waive a defense to a claim by not raising that defense at the administrative stage.

7

However, other circuits have held that when a plan administrator does not raise a defense during an individual's administrative review process, as LINA failed to do with its present accord and satisfaction defense, the administrator may be deemed to have waived that defense. *Lauder v. First UNUM Life Insurance Co.*, 284 F.3d 375, 382 (2d Cir. 2002); *see also Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991). To decide whether a defense has been waived, a court must conduct a "case-specific analysis" informed by several principles. *Lauder*, 284 F.3d at 381. As an initial matter, a court may not find waiver if doing so would expand the scope of coverage permitted under the plan. *Id.* For instance, a required element of coverage cannot be waived. *Id.* at 380. In addition, courts should not require administrators to "imagine every conceivable basis" for denial of a claim because such a requirement would cause ERISA notices to become "meaningless catalogs" of reasons for denial. *Id.* at 382. The *Lauder* court emphasized the importance of determining whether the administrator was aware of a given defense at the time of the administrative decision, and if so, why the administrator chose not to rely on the defense as a reason for denial. *Id.*

Here, there is no question that on June 14, 2004 when it denied Johnson's claim for underpayment of benefits, LINA was aware of the fact that it may have had the defense of accord and satisfaction available to it because LINA had been a party to the Louisiana litigation and therefore knew that the claims in that case had been settled. To raise the defense at the administrative stage would have required no guesswork or cataloguing of defenses by LINA; rather, the accord and satisfaction defense reasonably should have been at the forefront of LINA's mind when addressing Johnson's claim.

The accord and satisfaction argument fails for the alternate reason that the proper amount of Johnson's monthly benefit was not at issue in the Louisiana litigation. Rather, the only dispute in

8

that case was whether Johnson was entitled to continue receiving benefits; at that point, there was no disagreement as to the correct amount of those benefits, and therefore there was no disagreement leading to an accord and satisfaction of that claim.  LINA points to nothing indicating that Johnson has ever agreed to relinquish her right to challenge the amount of her benefits, either through a settlement of the Louisiana litigation or at any other time.  As the New Mexico Supreme Court explained in *Frazier v. Ray*, 29 N.M. 121, 219 P. 492, 493 (1923), a valid accord and satisfaction "must involve an unliquidated or disputed claim, as an existing dispute is one of the elements necessary to make such an agreement and its performance binding upon either party. Where no dispute exists with regard to the sum due, no consideration exists to support the agreement of the creditor to receive less than the agreed sum, or to release the debtor from the unpaid portion thereof." Here, there was no dispute as to the monthly sum due, only as to whether Johnson still qualified for benefits.  Accordingly, there was no accord and satisfaction that bars Count I of the Second Amended Complaint.

## II.     UNDERPAYMENT OF BENEFITS

The primary issue now before the Court is whether LINA properly excluded the "late commission" and the "vacation payment" when calculating Johnson's base monthly salary under the terms of the Policy.  According to the policy terms, the base salary is the "monthly average of 100% of total earnings as shown (1) on W-2 statement . . . for the calendar year immediately preceding the date of disability **or** (2) for the period employed, if less than a calendar year."  Doc. No. 65, Ex. C. (emphasis added).  In this case, Johnson was employed for less than a calendar year, and therefore subsection (2) applies.  In other words, the Court must look to Johnson's "total earnings" during the 247 days of her employment from October 8, 1984 until June 13, 1985.  As Johnson never returned

to work after June 13, 1985, it is undisputed that the "late commission" is part of her "total earnings" during the period of her employment with AHSC.  Similarly, the "vacation payment" was compensation for vacation days that Johnson had accrued during her employment period before her medical leave of absence and during her medical leave, and which were reflected on her W-2 for 1992.  Doc. No. 64, Ex. A, ¶ 7 and Ex. 4 thereto; Doc. No. 70, Ex. 1.  Accordingly, the Court concludes that both the "late commission" and the "vacation payment" are part of Johnson's total earnings for the period she was employed by AHSC, and therefore must be included in calculating her base monthly salary.  The fact that LINA included the "late commission" and the "vacation payment" when calculating Johnson's Social Security Offset in order to *decrease* the amount of her monthly benefit—a fact that LINA neither explains nor denies—yet refuses to include those amounts on the other side of the balance sheet further supports the conclusion that those are earnings which should be included in the base salary.

    LINA's arguments to the contrary are unavailing.  For example, LINA points to no policy language which supports exclusion of those earnings.  LINA does seem to rely upon the portion of the definition of "earnings" which applies to employees who have worked for more than one calendar year.  It defines such earnings as those "on W-2 statement . . . for the calendar year immediately preceding the date of disability."  From this, LINA argues that it need not include the earnings because neither Johnson nor Baxter provided LINA with Johnson's 1992 W-2 on which the "vacation payment" is reflected, and that the W-2 does not state on its face that the payment was for vacation benefits.  However, the definition of "earnings" upon which LINA relies does not apply here; indeed, the plain language of the policy does not require that the earnings of one employed for less than a year appear on the W-2 form, nor does LINA point to any policy language requiring Johnson to provide

it with her W-2 within a particular period of time (with the exception of the contractual limitations period, a defense which LINA has failed to preserve).  In addition, the undisputed evidence is that Baxter paid those monies as vacation benefits.  Doc. No. 70, Ex. 1.

With regard to the "late commission" payment, LINA does not dispute that Johnson earned those commissions, or that the commissions were paid to her in 1986.  Instead, LINA contends that there is no evidence that the commission was earned during her period of employment.  Given the record before the Court, this argument is meritless, as it is undisputed that Johnson never returned to work after June 13, 1985, and therefore the only reasonable conclusion is that she earned those commissions during the relevant employment period.  The fact that LINA included the "late commission" in the Social Security Setoff amount further undermines LINA's argument.

Next, LINA argues that the "late commission" and "vacation payment" should not be included, because to do so would result in a monthly benefit greater than the policy limit of $2,500.  LINA ignores its own documentation which indicates that the policy limit was raised to $10,000 per month.  *See* Doc. No. 65, Ex. D and Doc. No. 80, Ex. A.

Finally, LINA argues that it is entitled to credit for alleged overpayments made to Johnson.  LINA contends that the Social Security Offset should be $623 instead of $561, but it provides the Court with no explanation of how it calculated those numbers or with any citations to evidence to support its conclusions.  Similarly, LINA contends that Johnson received dependent Social Security disability benefits from December 1985 through August 1987 on behalf of Blair W. Johnson which must be offset against disability benefits paid by LINA.  Once again, however, LINA cites no evidence of such dependent benefits.  Though the parties may have disputes over these issues, on the current record the Court is in no position to decide those disputes.

11

In accordance with the foregoing, the Court calculates Johnson's future monthly benefit as follows: $44,068.94 (total of Johnson's 1984 W-2, 1985 W-2, late commission, and vacation payment) ÷ 247 (the number of days in employment period) x 365 (the number of days in the year) = $65,123.30 (annualized earnings) x .60 (60% of salary, as provided in the Policy) ÷ 12 (number of months in the year) = **$3,256.19** (monthly benefit amount <u>before</u> Social Security Offset).[6]

As for past underpayments to Johnson, the Court calculates those as follows for the "late commission payment": $4,381.98 (amount of earnings) ÷ 247 (the number of days in employment period) x 365 (the number of days in the year) = $6,475.40 (annualized earnings) x .60 (60% of salary, as provided in the Policy) ÷ 12 (number of months in the year) = $323.77 (monthly shortfall) x 238 months (the number of months from January 1, 1987, when commission payment was reported, through October 31, 2006) = **$77,057.26** (shortfall <u>before</u> Social Security Offset).

The past underpayments to Johnson for the "vacation payment" are: $2,538.17 (amount of earnings) ÷ 247 (the number of days in employment period) x 365 (the number of days in the year) = $3,750.74 (annualized earnings) x .60 (60% of salary, as provided in the Policy) ÷ 12 (number of months in the year) = $187.54 (monthly shortfall) x 166 months (the number of months from January 1, 1993, when vacation payment was reported, through October 31, 2006) = **$31,131.64** (shortfall <u>before</u> Social Security Offset).

The total shortfall for past vacation and commission payments before the Social Security Offset is therefore **$108,188.90**.

---

[6] The parties have not briefed the proper amount of the Social Security Offset in any detail. Accordingly, the Court does not reach that issue.

**IT IS THEREFORE ORDERED** that Defendant *Life Insurance Company of North America's Motion for Summary Judgment and Brief in Support* [Doc. No. 61] is **DENIED**, and *Plaintiff's Motion for Summary Judgment Against Life Insurance Company of North America for Underpayment of Benefits* [Doc. No. 64] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**